IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA | | |
| | | 13 Cr. 579-001 (ALC) |
| v. | | The Hon. Andrew L. Carter, Jr. |
| SCOTT STAMMERS, | |
| Defendant. | |

**DEFENDANT SCOTT STAMMERS' SENTENCING MEMORANDUM**

SEAN M. MAHER
*Counsel for Scott Stammers*
The Law Offices of Sean M. Maher, PLLC
233 Broadway, Suite 801
New York, NY 10279
(212) 661-5333
(212) 227-5808 fax

**Introduction**

> When [Scott] was arrested in a way I was relieved as I had begun
> to suspect I would receive a call telling me he had been found dead
> in a ditch. Better to be in prison than dead. He contacted me
> shortly after his transfer to America and I was finally able to hear
> ███████████████ I found a man that was relieved that it was all
> over, someone who admitted he had made a mistake, got in over
> his head. Their was no arrogance, nothing but apologises for what
> he had dragged us all into. I found a broken man, who had lost
> everything, someone who knew that it would be years till he saw
> ████████████████ He was finally ████████
> that is why I support him 100%, because I know he is a good man,
> someone who is loyal and caring, someone who helps others, but
> someone who made a terrible mistake and trusted the wrong
> people.[1]

Mr. Stammers made a horrible decision to join the charged conspiracy.  For years

Mr. Stammers presented a façade of strength and stoicism in the face of calamity.  Little

did even those closest to him know his private pain and suffering.  █████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████  Mr.

Stammers' trajectory to the MCC, while not justified, is somewhat understandable.

Perhaps more remarkable is the resilience Mr. Stammers has shown the last two and a

half years to reclaim his life ███████████████████████████

Considering the factors outlined in 18 U.S.C. § 3553 and the facts outlined below, it is

---

[1] ███████████████████████████████████████████████
███████████████████████████████████████████████████,
sensitive information and names are being redacted in the publically filed document and
it is requested that such redactions and all letters of support remain sealed after
sentencing.

respectfully requested that the Court impose a sentence of 120 months' imprisonment, which would constitute a reasonable sentence that is sufficient, but not greater than necessary, to comply with the purposes of sentencing.

## Procedural History

On September 24, 2013 Mr. Stammers was arrested and detained in Thailand at the behest of U.S. authorities.  On November 20, 2013 Mr. Stammers was brought to the Southern District of New York and formally arrested by U.S. authorities.  The indictment charged Mr. Stammers and numerous co-defendants with conspiracy to distribute and possess with intent to distribute 500 grams and more of methamphetamine for the purpose of unlawful importation, in violation of 21 U.S.C. §§ 959(a) 960(a)(3), 960(b)(1)(H), and 963.

Mr. Stammers pleaded guilty to the indictment and now stands before the Court for sentencing.  The government submitted a *Pimentel* letter to the Court and the Probation Office conducted a presentence interview of Mr. Stammers and issued its first draft of the Presentence Investigation Report ("PSR") on January 26, 2016.  Mr. Stammers, through counsel, has raised numerous written objections to the PSR.  A copy of those written objections is attached as Exhibit A.[2]  Sentencing is scheduled for March 18, 2016.  Mr. Stammers has been detained continuously since September 24, 2103.

## The Plea and the Government's *Pimentel* Letter

After being charged by federal authorities, Mr. Stammers, through counsel, expeditiously notified the government that he did not wish to seek a trial but instead

---

[2] The defense objections previously have been provided to the Probation Office and the government. Because the PSR is confidential, the defense objections are not being publically filed at this time, however a copy is being provided to the Court and the government.

wanted to accept responsibility and enter a plea of guilty.  Although the parties did not

execute any type of plea agreement, the government did provide Mr. Stammers and the

Court a *Pimentel* letter that outlined the government's view on the applicable U.S.

Sentencing Guidelines.  In short, the government posits that the base offense level is 38,

and that 3 levels should be assessed under § 3B1.1(b)(manager or supervisor), resulting in

an adjusted offense level of 41.  Subtracting 3 levels for timely acceptance of responsibility

results in a total offense level of 38.  At Criminal History Category I, the government's final

calculation is a Guidelines sentencing range of 235 to 293 months' imprisonment.[3]

### The Probation Office's Sentencing Recommendation

The Probation Office has made a specific sentencing recommendation of 192

months' imprisonment along with other conditions. The Probation Office's Guidelines

calculation can be summarized as follows: base offense level of 38, plus 2 levels under §

2D1.1(b)(5)(importation of methamphetamine), plus 3 levels under § 3B1.1(b)(manager or

supervisor),  minus 3 levels for timely acceptance of responsibility, resulting in a total

offense level of 40.  Combined with a Criminal History Category of I, the Probation

Office calculates the final Guidelines range to be 292 to 365 months.  In light of various

mitigating factors contained in the PSR, the Probation Office recommends a § 3553(a)

downward variance to a final sentence of 192 months' imprisonment, followed by 5 years

of post-release supervision.  No fine and no restitution are recommended.

### Defense Objections to the PSR

Mr. Stammers has raised numerous objections and corrections to the PSR and

hereby incorporates by reference the objections contained in Exhibit A.  The Probation

Office has accepted a number of the defense's requests, specifically in regard to

---

[3] Applicable fine ranges are set forth on page 2 of the *Pimentel* letter.

3

paragraphs 99, 103, 113, 114, 115, 118 and 120.  To the extent that the Probation Office has declined to accept the changes requested by the defense, it is respectfully requested that the Court grant the relief as requested in Exhibit A and in the instant memorandum. The remaining objections center on Mr. Stammers' role in the offense and the calculation of the Guidelines range.

## I.      Role in the Offense

Paragraphs 12, 13, and 26 of the PSR incorrectly state or assume that Mr. Stammers was involved in the storing and safekeeping of the 30 kilograms of methamphetamine seized by law enforcement agents in 2012.  While the final PSR has added the defense objection in brackets at the end of each paragraph, the paragraphs should be fully amended to remove any suggestion that Mr. Stammers was involved in the storing and safekeeping of the 30 kilograms of methamphetamine seized by law enforcement agents in 2012.

## II.     Sentencing Guidelines Calculation

Mr. Stammers agrees that the base offense level under § 2D1.1 is 38, however no additional levels should be assessed under § 2D1.1(b)(5) or § 3B1.1(b).

### A.      Specific Offense Characteristics

The Probation Office recommends assessing 2 levels under § 2D1.1(b)(5), which states as follows:

> If (A) the offense involved the importation of amphetamine or methamphetamine or the manufacture of amphetamine or methamphetamine from listed chemicals that the defendant knew were imported unlawfully, and (B) the defendant is not subject to an adjustment under § 3B1.2 (Mitigating Role), increase by **2** levels.

Mr. Stammers adopts the argument raised by co-defendant Valkovic as to why this enhancement should not apply to an inchoate crime of conspiracy, as opposed to an offense where methamphetamine actually is unlawfully imported.[4]  Although the initial clause contains the word "involved," the clause should not be construed so broadly as to include conspiracies in which no methamphetamine or amphetamine ever is imported.

In addition, this specific offense characteristic does not apply if a defendant is subject to a mitigating role adjustment under § 3B1.2.  As argued below, Mr. Stammers should receive a mitigating role adjustment, which then precludes the imposition of the 2 levels under § 2D1.1(b)(5).

**B.     Role in the Offense**

The government and the Probation Office aver that 3 levels should be assessed under § 3B1.1(b) for Mr. Stammers' alleged role as a manager or supervisor in the offense.  The Court should decline to do so.  In fact, the Court should decrease the adjusted offense level by 2 under § 3B1.2 because Mr. Stammers was a minor participant in Paul Le Roux's criminal conspiracy and had a very limited role in Le Roux's criminal activity.  Mr. Stammers only agreed to help store and transport a limited number of shipments. Mr. Stammers followed the orders of Le Roux and people who worked for Le Roux.  Mr. Stammers did not have any decision-making in the sale of the drugs and he did not have permission to move any drugs without Le Roux's explicit approval.

Accordingly, the Court should find adopt the following Guidelines calculation:

BOL (§ 2D1.1):                                    38

Mitigating role (§ 3B1.2):                        - 2 levels

---

[4] Sentencing Memorandum of Adrian Valkovic at 15-17, Doc. No. 109 (filed Dec. 24, 2015)(hereby incorporated by reference).

Acceptance of responsibility (§ 3E1.1(a)):          - 2 levels

Timely acceptance of responsibility (§ 3E1.1(b)):   - 1 level

Total Offense Level =                                      33

With a total offense level of 33 and an uncontested Criminal History Category of I, the applicable Guidelines range is 135 to 168 months.

**Analysis**

## I.      Sentencing Post-*Booker*

Under Booker and its progeny, including United States v. Crosby,[5] and United States v. Cavera,[6] the Sentencing Guidelines, while no longer mandatory, are advisory and should be "taken into account" in determining the appropriate sentence under 18 U.S.C. § 3553(a).[7]  The sentencing judge is to "consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue."[8]

The Second Circuit has emphasized that "a district court may not presume that a Guidelines sentence is reasonable; it must instead conduct its own independent review of the sentencing factors, aided by the arguments of the prosecution and defense."[9]  When considering whether to impose a sentence outside of the recommended Guidelines range, a district court "'must consider the extent of the deviation and ensure that the justification

---

[5] 397 F.3d 103 (2d Cir. 2005).
[6] 550 F.3d 180, 187 (2d Cir. 2008)(en banc).
[7] Booker, 543 U.S. at 264; see also Cavera, 550 F.3d at 189 ("The Guidelines provide the 'starting point and the initial benchmark' for sentencing, and district courts must 'remain cognizant of them throughout the sentencing process'")(quoting Gall v. United States, 128 S. Ct. 586, 596 & n.6 (2007)).
[8] Pepper v. United States, 131 S.Ct. 1229, 1240 (2011)(quoting *Koon v. United* States, 518 U.S. 81, 113 (1996)).
[9] Cavera, 550 F.3d at 189.

is sufficiently compelling to support the degree of the variance,'"[10] in order to reach "an informed and individualized judgment in each case as to what is 'sufficient, but not greater than necessary' to fulfill the purposes of sentencing."[11]

In determining an appropriate sentence, a district court must adhere to § 3553(a), which directs that "[t]he court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing.  Such a sentence must be fashioned:

> (A)      to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B)      to afford adequate deterrence to criminal conduct;
>
> (C)      to protect the public from further crimes of the defendant; and
>
> (D)      to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.[12]

In the final analysis, the district court must consider all the factors outlined 18 § 3553(a):

- the nature and circumstances of the offense and the history and characteristics of the defendant;

- the four legitimate purposes of sentencing;

- the kinds of sentences available;

- the Guidelines range itself;
- any relevant policy statement by the Sentencing Commission;

- the need to avoid unwarranted sentence disparities among defendants; and

- the need to provide restitution to any victims.

---

[10] Cavera, 550 F.3d at 189 (quoting Gall, 128 S. Ct. at 597).
[11] Id. (quoting 18 U.S.C. § 3553(a)).
[12] See 18 U.S.C. §3553(a)(2); Pepper, 131 S.Ct. at 1243 (2011).

## II.     Applying the § 3553(a) Factors

Taking into account all of the factors set forth in § 3553(a), it is respectfully submitted that a sentence of 120 months would constitute not only a sentence "sufficient but not greater than necessary" to achieve the objectives of sentencing, but also a "reasonable" sentence under post-<u>Booker</u> sentencing jurisprudence.

### A.     The Nature and Circumstances of the Offense and the History and Characteristics of Mr. Stammers

### i.     *The Nature and Circumstances of the Offense*

The charged offense, as it relates to Mr. Stammers, involved Mr. Stammers' agreement to assist Paul Le Roux in the storage and transportation of methamphetamine.

According to an anonymous federal agent quoted in the New York Times, Le Roux, a South African criminal mastermind, is "Viktor Bout on steroids."[13]  Le Roux has been linked to vast criminal enterprises involving drugs, mercenary warfare, guns, and gold spanning four continents.  He also has been linked to several deaths.

Although Le Roux is not mentioned by name in the indictment or PSR, the conspiracy was a collaboration between Le Roux and the government.  After reportedly being arrested by U.S. authorities in 2012, Le Roux began cooperating, making phone calls and sending emails at the behest of the government to build cases against Le Roux's subordinates.  While traditional federal prosecutions follow the template of using "smaller fish" to catch the "big fish," in this case the government started off by catching a whale that has then been used to help the government scoop up minnows and plankton.

Mr. Stammers had been employed by Le Roux to provide security services.  Mr.

---

[13] <u>In Real Life, 'Rambo' Ends Up as a Soldier of Misfortune, Behind Bars</u>, N.Y. TIMES, Dec. 20, 2014.

Stammers has admitted his guilt in agreeing to help Le Roux with a contemplated shipment of 100 kilograms of methamphetamine.  Mr. Stammers' role in Le Roux's criminal orchestrations, however, was very limited.

Mr. Stammers did not attempt to obstruct justice in any way, either at the time of his arrest or afterward.[14]

### ii.    *The History and Characteristics of Mr. Stammers*[15]

████████████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████████████████

██████████████

█████████████████████████████████████

████████████████████████████████████

█████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████████

████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████

---

[14] See PSR ¶ 74.
[15] ██████████████████████████████████████████████

██████████████████████████████████████





Mr. Stammers was not a great student, ███████████████ He was, however, quite industrious and determined.  Mr. Stammers began working, first at whatever jobs he could get.  He was drawn to the security field and got his first private security job around age 18; within a year, he was stabbed on the job.  He later joined larger security firms and made a good living handling security matters across Southeast Asia.  Despite his difficulty with formal school environments, Mr. Stammers has a working knowledge of Tagalog, Thai, and Cantonese.

---

[17] ████████████████████████████

When Mr. Stammers was around 21 years old, he met a young woman ███████ ███████████████████ with whom he fell in love. ███████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████



---



███████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████

█████████████

    ████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

██████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████

████████████████████

      Mr. Stammers' family and long-term friends know about Mr. Stammers' current situation and fully support him.  In their letters to the Court, common themes emerge of a good, caring man who made tragic decisions, yet has come back from the brink.

      ████████████ writes the following:

> Scott helped me financially when I was in a poor way not by
> giving me funds, but by giving me advise, buying my wife and
> myself dinner and taking me for a drink now and again. I know
> that he helped a number of other people ████████████ and was

always ready to assist anyone who really needed it he has a very good heart, just look past his shell.[21]

████████████████ confirms that "Scott has always shown honesty, love, courage, kindness and generosity, Scott is a loving character and has been a trustworthy and a caring friend who has also helped my family members. He is also a Godfather to my daughter."[22]

████████████████████████ shares the following:

Since his incarceration, I have witnessed Scott turn into a humble, repentant individual who is forever trying to find forgiveness in his mistakes he has made. All he wants to do now is to make amends, be with [h]is family and put this all behind him, as I would like it too.[23]



---

[21] Exhibit H.
[22] ████████████████████ attached as Exhibit I.
[23] Exhibit C.



### B.    A Sentence Below the Guidelines Range Will Adequately and Reasonably Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment for the Offense

A sentence of 120 months will reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense.  Such a sentence would send a strong message that participation in a drug conspiracy is a serious offense, yet provides some leniency for the unique circumstances of Mr. Stammers, thus providing a just punishment tailored for the offense and defendant.

### C.    A Sentence Below the Guidelines Range Will Afford Adequate Deterrence to Criminal Conduct and Will Adequately and Reasonably Protect the Public from Further Crimes of Mr. Stammers

The requested sentence will provide more than adequate specific and general deterrence considering the facts before the Court.  Specific deterrence will be enhanced automatically by virtue of Mr. Stammers' eventual deportation subsequent to any imposed sentence.

---

[24] Exhibit D.

**D.    The Court Should Decline to Impose a Fine and Give Credit for Time Served**

Taking into consideration Mr. Stammers' indigency,[25] it is respectfully requested that the Court decline to impose a fine.  It also is requested that the Court reduce Mr. Stammers' sentence by two months, the time he served in custody in Thailand while charged on the same basic facts as the instant offense.

## Conclusion

Accordingly, for all the reasons set forth above, it is respectfully submitted that the Court impose a sentence of 120 months' imprisonment.

Dated: March 4, 2016

Respectfully submitted,

_____/S/_____

SEAN M. MAHER
SM 7568
*Counsel for Scott Stammers*
The Law Offices of Sean M. Maher, PLLC
233 Broadway, Suite 801
New York, NY 10279
(212) 661-5333
(212) 227-5808 fax

---

[25] PSR ¶ 120.